IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE TAYLOR, | ) | |
| | ) | CASE NO. 1:14-CV-847 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Stephanie Taylor's ("Plaintiff" or "Taylor") applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

## I.  PROCEDURAL HISTORY

Taylor previously received SSI benefits based on disability as a child. (Tr. 126).  After she turned 18-years-old, her eligibility for benefits was re-determined under the rules for determining disability as an adult. (*Id*.).  On May 10, 2010, an ALJ determined that Plaintiff did not qualify for benefits under the standards for adults. (Tr. 126-35).

Plaintiff filed the application for Supplemental Security Income benefits currently at issue around October 6, 2010. (Tr. 236-41).  Plaintiff alleged she became disabled beginning on

September 1, 1998, due to suffering from attention deficit hyperactivity disorder ("ADHD"). (Tr. 236, 259).  Taylor's claims were denied by the Social Security Administration initially and upon reconsideration. (Tr. 137-58).

At Plaintiff's request, administrative law judge ("ALJ") Frederick Andreas convened an administrative hearing on May 17, 2012, to evaluate her application. (Tr. 34-75).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*)  A vocational expert ("VE"), Mr. Sulken, also appeared and testified. (*Id.*).

On June 15, 2012, the ALJ issued an unfavorable decision, finding Taylor was not disabled. (Tr. 50-59).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

economy. (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 42-45).  The Appeals Council denied the request for review, making the ALJ's June 15, 2012 determination the final decision of the Commissioner. (Tr. 1-5).  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on April 9, 1989, and was 21-years-old on the date the application was filed, making her a "younger individual" for social security purposes. 20 C.R.F. § 416.963(c). Taylor obtained a high school degree while enrolled in special education classes. (Tr. 78, 257, 347-48). Plaintiff generally earned C's and D's, and scored at the lowest level – "Limited" – on her Ohio Graduation Tests in every subject area.  (Tr. 283-85).  Plaintiff had Individualized Education Program assistance for these tests, including working in groups, extra time, use of a calculator and dictionary, and having the tests read to her.  (Tr. 317).

Taylor testified that she had worked as a cashier at the Salvation Army. (Tr. 75-76). According to her testimony, after three or four months she was re-assigned from the cashier position to a floor runner position (putting away clothes) because she had difficulty handling money. (Tr. 76-77).  She works approximately 25 hours each week, and explained that there were many reasons she did not work more hours, one of which was difficulty concentrating.  (Tr. 77).  At the time of the hearing, Taylor was still employed as a floor runner.  (Tr. 75-76).

### B.  Medical Evidence

On August 24, 2009, Plaintiff presented to Pathways Counseling and Growth Center ("Pathways") and met with S. Yancey Wegelin, L.I.S.W.-S. (Tr. 458).  Taylor indicated that she needed a new diagnosis for her disability claim.  (*Id.*).  She complained of auditory and visual

hallucinations, low self-esteem, panic attacks, inability to sleep, losing control of her temper, and feeling overwhelmed.  (*Id.*).  Plaintiff had difficulty understanding some of Ms. Wegelin's basic questions, such as the occupation of her parents, providing information about her siblings instead.  (*Id.*).  Taylor indicated that in school, she had been enrolled in classes for individuals with learning disabilities and was previously diagnosed with ADHD.  (*Id.*).  She reported that a local social services agency, El Centro, managed her money for her.  (*Id.*).

Between August and October 2009, Plaintiff attended six counseling sessions with Ms. Wegelin. (Tr. 450-57).  On August 28, 2009, Ms. Wegelin noted that Plaintiff's mood and behavior was calm and cooperative, but her cognition seemed limited and she had difficulty understanding written questionnaires on an adult ADHD questionnaire.  (Tr. 456).  Plaintiff complained of auditory hallucinations and explained that she had tried to apply for a job, but was unable to understand the job application. (*Id.*).  On September 10, 2009, Taylor complained of prior visual hallucinations. (Tr. 454).  She indicated that she was able to read, but could not understand the words she was reading. (Tr. 454-55).  Ms. Wegelin also stated that Plaintiff had not seemed to understand the questionnaires she previously presented to her, and had to explain some of the questions for her. (Tr. 455).  On September 17, 2009, Plaintiff again indicated she experienced auditory hallucinations. (Tr. 452).

Ms. Wegelin diagnosed Plaintiff with psychotic disorder, not otherwise specified ("NOS"); ADHD, combined type; and a possible learning disability. (Tr. 426).  At intake, Plaintiff's Global Assessment of Functioning ("GAF") score was 51, representing moderate symptoms.  (*Id.*).  Plaintiff cancelled three counseling sessions at Pathways that were scheduled for October, November, and December 2009.  (Tr. 449).

4

On October 1, 2009, Plaintiff underwent a diagnostic assessment at the Nord Center.  (Tr. 346-57).  Plaintiff indicated that one year prior, she experienced two visual hallucinations, but had not experienced any since.  (Tr. 346).  Taylor denied auditory hallucinations.  (*Id.*).  She also denied limitations in activities of daily living and reported that she would be starting a new job at McDonalds. (Tr. 347).  Plaintiff stated she had issues with her attention span, found it hard to stay on task,  and had experienced difficulty learning and sleeping.  (Tr. 352).  During a mental status examination, Plaintiff's affect was normal, her mood was euthymic, and her thought process was clear and concrete.  (Tr. 354).  The intake facilitator indicated that Taylor appeared to be of borderline intelligence.  (*Id.*).  Taylor was diagnosed with an adjustment disorder, unspecified, and assigned a GAF score of 75, representing transient symptoms or no more than slight impairment.  (Tr. 356).

Plaintiff began treatment at the Nord Center with psychologist Thomas Haglund, Ph.D., on October 13, 2009.  (Tr. 374).  Dr. Haglund treated Plaintiff approximately nine times between October 2009 and August 2010.  (Tr. 390, 394, 398, 400, 402-03, 405-07).  On October 13, 2009, Plaintiff expressed that she wanted a re-evaluation for ADHD.  (Tr. 374).  She described the following cognitive deficits: poor memory, inability to stay on task, poor problem-solving skills, difficulties with verbal comprehension, and memory problems.  (*Id.*).  Dr. Haglund scheduled intelligence testing in the form of the Wechsler Adult Intelligence Scale ("WAIS-III").  (*Id.*).

Around November 2009, Dr. Haglund completed a psychological evaluation report, after reviewing a May 2004 report from Oberlin Pediatrics, prior academic reports, the September 2009 Pathways diagnostic assessment, and the Nord Center's October 2009 diagnostic assessment. (Tr. 468-69).  On the WAIS-III Plaintiff obtained a verbal IQ score of 63 (falling

into the first percentile), a performance IQ score of 56 (falling into the 0.2 percentile), and a full scale IQ score of 56 (falling into the 0.2 percentile).  (Tr. 470).  Plaintiff similarly had low scores on the composite scales, which included verbal comprehension, perceptual organization, working memory, and processing speed. (*Id.*).  Dr. Haglund indicated that the test results were similar to intelligence testing from 1998, and he opined that Plaintiff was of sub-average intelligence.  (Tr. 471).  He noted that Plaintiff had not been wearing her glasses at the time of testing, which may have somewhat affected her performance.  (*Id.*).

In regard to ADHD or ADD, Dr. Haglund stated that Plaintiff's description of her adult behavior seemed consistent with the diagnostic criteria for the conditions.  (Tr. 471).  Yet, the doctor noted that during the interview, she did not appear restless.  (Tr. 470).

Dr. Haglund concluded his evaluation by stating that Plaintiff "has a well-documented history of emotional and behavioral problems and that she has also struggled with poor attention, impulsivity, and distractedness."  (Tr. 472).  He recommended continued behavioral counseling to aid in the development of coping strategies for dealing with stress and for her cognitive and behavioral problems. The doctor opined that medication could help to improve her attention span.  Dr. Haglund believed that, with respect to work and school, Plaintiff required vocational counseling or academic support to overcome her deficits.  Given the distant and non-recurring nature of her reported visual hallucinations, Dr. Haglund believed treatment for a psychotic disorder was not necessary, unless the hallucinations returned. (*Id.*).

In January 2011, James Spindler, M.S., performed a mental consultative examination and intelligence testing. (Tr. 427-33).   At the time of the examination, Plaintiff was 20-years-old and reported that she was not taking psychotropic medications and had ceased counseling at Pathways and the Nord Center. (Tr. 428).  Mr. Spindler noted that since October 2010, Plaintiff

had been employed an average of 30 hours per week as a cashier at the Salvation Army.  Taylor stated that she liked her job, but was having difficulty with the cash register and making proper changed.  She had no major problems getting along with supervisors or coworker's.  She had no other employment and had received no vocational rehabilitation assistance.  (*Id.*).  Following a mental status examination, Mr. Spindler diagnosed ADHD and borderline intellectual functioning.  (Tr. 427-31).  He assigned a GAF score of 55, representing moderate symptoms. (Tr. 431).

Regarding her work-related mental abilities, Mr. Spindler indicated that Plaintiff's ability to understand, remember, and follow instructions was moderately impaired due to her borderline intellectual functioning.  Nevertheless, Mr. Spindler felt that Plaintiff was mentally capable of performing unskilled and non-academic-type jobs.  (Tr. 432).  Mr. Spindler opined that Plaintiff's ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks was mildly impaired due to her ADD.  (*Id.*).  He further explained that during the evaluation, Plaintiff seemed somewhat easily distracted, but she was generally able to re-attend without being asked to do so by the examiner.  (*Id.*).  Mr. Spindler indicated that, should she be granted disability benefits, Plaintiff "may benefit from the assistance of others in managing her funds" until she became more experienced in managing money.  (*Id.*).

On January 26, 2011, state agency reviewing psychologist Alice Chambly, Psy.D., conducted a review of the record.  (Tr. 143).  She concluded that new evidence since the ALJ's decision in May 2010 was not material and adopted the prior RFC, which indicated that Plaintiff could perform a range of simple, routine tasks.  (*Id.*).

In May 2011, state agency reviewing psychologist Bonnie Katz, Ph.D., conducted a second review of the record. (Tr. 152-55).  Dr. Katz did not adopt the 2010 ALJ's decision because it appeared to be pending Appeals Council review. (Tr. 155).  Instead, Dr. Katz opined:

> Claimant is able to understand, remember, and carry out simple quick work tasks. Claimant maintains sufficient concentration/persistence for these work tasks.  Claimant would have difficulty with more detailed tasks and maintaining concentration for extended periods of time.  Claimant is able to interact with co-workers and supervisors.  Claimant may have difficulty with jobs requiring frequent changes in routine.

(Tr. 155).  Dr. Katz further specifies that Plaintiff was moderately limited in her abilities to maintain attention and concentration for extended periods, and in her ability to carry out detailed instructions.  (Tr. 154).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 30, 2010, the application date.

2. The claimant has the following severe impairments: borderline intellectual functioning, bipolar disorder, and a history of attention-deficit hyperactivity disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She is limited to understanding, remembering, and carrying out simple instructions, and performing repetitive tasks throughout the workday.

5. The claimant has no past relevant work.

6. The claimant was born on April 9, 1989, and was 21 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2010, the date the application was filed.

(Tr. 52-59) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

9

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Limitations Not Accounted for in RFC

#### 1.  Reminders to "Stay on Task"

Testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs as long as the question accurately accounts for the individual's physical and mental impairments.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*quoting Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005).  But "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts."  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)).  When forming a hypothetical question to present to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff asserts the RFC and hypotheticals presented to the vocational expert were insufficient because they did not adequately account for Plaintiff's need for constant reminders

to stay on task. In support of her argument, Plaintiff points only to her own testimony, which she argues is supported by other evidence in the record.   However, the ALJ discredited this testimony, pointing out that the record is devoid of corroborating statements from her employer regarding special accommodations, and contained inconsistent statements to Mr. Spindler in the area of concentration, persistence, and pace.  (Tr. 56).  Further, the referenced report of Mr. Spindler indicated that, although Plaintiff was easily distracted during his exam, she was "generally able to re-attend without being asked to do so."   (Tr. 56, 432).  Plaintiff does not challenge the ALJ's credibility finding, and has not pointed to any medical evidence requiring incorporation of this limitation in the RFC.  Thus, Plaintiff's argument has no merit.

### 2. Additional Limitations

Plaintiff also asserts the RFC and hypotheticals presented to the vocational expert were insufficient because they did not adequately account for Plaintiff's poor arithmetic, reading, and writing skills, as well as her inability to tell time or make computations.  Although the ALJ gave reasons in support of his more limited RFC, the opinion appears to rely too heavily on his potentially mistaken view that she was successfully working as a cashier for 30 hours per week since October 2010.  Lacking more verifiable reasons, his opinion does not provide adequate support for his decision to omit these limitations from the RFC.  For the foregoing reasons, this Court finds omission of these limitations is not supported by substantial evidence, and remand is necessary for further analysis on this issue.

Throughout his opinion, the ALJ supported his findings as to Plaintiff's functional abilities by stating that she has worked 30 hours a week at the Salvation Army as a cashier since October 2010.  (Tr. 52-59).  However, Plaintiff's testimony, as well as examination notes in the record, indicated that Plaintiff was not able to successfully perform this job due to her poor math

11

skills, and that she was re-assigned as a floor runner after only three or four months.  (Tr. 75-77, 428-30).  Recognizing that Plaintiff was no longer working as a cashier at the time of the hearing, the ALJ unsuccessfully attempted to establish whether Plaintiff was removed from her cashier post after only three months; Plaintiff was unable to communicate a definite answer.  (Tr. 75-77).  Despite his acknowledgement both at the hearing and in his opinion that Plaintiff was re-assigned from cashier to floor runner, he continuously supported his findings based on her work *as a cashier* since October 2010.  (Tr. 52-59, 75-77).  Because the ALJ seemed to assume a longer duration and level of success at her work as a cashier, despite evidence to the contrary and without further explanation, the ALJ improperly relied on it to support Plaintiff's functional assessment throughout his opinion.

Further, the ALJ gives great weight to the opinion of Mr. Spindler, which was based on an assessment prior to Plaintiff's re-assignment as a floor runner.  Mr. Spindler's report (dated January 2011), which refers multiple times to Plaintiff's work as a cashier, found her functioning in the borderline range of intelligence, despite lower test scores.  (Tr. 427-33).  Mr. Spindler also conducted simple verbal and arithmetic assessments, after which he noted Plaintiff "appears to have significant difficulty with practical academic skills and said she is having difficulty working the cash register and making correct change."  (Tr. 431).  While giving great weight to Mr. Spindler's opinion, the ALJ does not reference the verbal and mathematics limitations included in his report, which is supported by other evidence in the record.  (Tr. 283-85, 317, 454-55, 470).  Indeed, while reasoning that Plaintiff has worked 30 hours a week as a cashier at the Salvation Army in support of her functional capabilities, the ALJ indicated her ability to maintain employment as a cashier "requires a knowledge of counting money and making correct

change." (Tr. 54).  The ALJ provided no reasons for rejecting the academic limitations presented in Mr. Spindler's report.

These limitations are supported by other evidence on the record, notably her school records, specifically from high school and graduation testing.  Plaintiff earned poor grades in her special education classes for English, math, social studies, science, and occupations.  (Tr. 283, 314).  Additionally, despite Individualized Education Program accommodations for her Ohio Graduation Test, including working in groups, extra time, use of a calculator and dictionary, and having the test read to her, Plaintiff scored in the lowest possible category in all five subjects (reading, mathematics, writing, science, and social studies).  (Tr. 285, 317). The ALJ merely mentioned that Plaintiff had a history of special education and does not refer to her school records in his decision.  (Tr. 56).  The ALJ offered no reasons for not considering this objective evidence, which seems to undermine the omission of arithmetic, reading, and writing limitations from the RFC and vocational hypotheticals.  See, e.g., *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").

As such, the RFC and hypotheticals that do not account for Plaintiff's low abilities in arithmetic, reading, and writing do not adequately describe Plaintiff's functional abilities.  This is not harmless error because the occupations provided by the vocational expert as examples of jobs Plaintiff can perform all require a threshold level of math, reading, and writing skills that the record indicated Plaintiff may not possess.  (Tr. 58, 429-30).  All three require Level 1 Math, which includes the ability to add and subtract two-digit numbers, multiply and divide 10's and 100's by 2, 3, 4, and 5; perform four basic arithmetic operations with coins as part of a dollar;

13

and perform operations with units such as cup, pint, and quart, inch, foot, and yard, and ounce and pound.  DICOT #318.687-010, 323.687-010, 361.684-014.  Both the dishwasher and laundry worker jobs require Level 1 Reading skills, which includes recognizing the meaning of 2,500 (two- or three-syllable) words and reading at a rate of 95-120 words per minute, and an ability to write simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. DICOT #318.687-010, 361.684-014.  The cleaner job has more advanced reading and writing requirements, with a Level 2 Reading requirement (including the ability to read 190-215 words per minute and have a passive vocabulary of 5,000-6,000 words), and write compound and complex sentences using cursive style.  DICOT #323.687-010.   Because the vocational expert's determination that Plaintiff can perform these three jobs is based on insufficient hypotheticals, the vocational expert testimony is not sufficient evidence to show Plaintiff has the functional ability to perform these jobs.  *Ealy v. Comm'r of Soc. Sec*., 594 F. 3d 504, 517 (6th Cir. 2010) ("Because the controlling hypothetical inadequately described [claimant's] limitations, the expert's conclusion that [claimant] could work as an assembler, inspector, packer, or production worker does not serve as substantial evidence that [claimant] could perform this work.").

Accordingly, because the ALJ incorrectly relied on a potentially erroneous work history, and did not provide good reasons for his rejection of evidence as to Plaintiff's limited math, reading, and writing skills (which are required for the three jobs presented by the vocational expert), his finding is not supported by substantial evidence, and remand is necessary.

**B.  Opinion Evidence**

**1.  Mr. Spindler**

It is well-established that for an ALJ's decision to stand, the ALJ is not required to discuss every piece of evidence in the record. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC. See, e.g., *Fleischer*, 774 F. Supp. 2d at 881 ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Plaintiff argues the ALJ erred when he gave "great weight" to the opinion of Mr. Spindler, the agency's examining psychologist, but did not account for two specific limitations from his report in the RFC: that Plaintiff was easily distracted, and that Plaintiff is not able to manage funds. In his opinion, Mr. Spindler noted that during his evaluation, Plaintiff "seemed somewhat easily distracted, though she was generally able to re-attend without being asked to do so by the examiner." (Tr. 432). However, this statement is not a limitation, but rather merely an observation used to support his opinion that Plaintiff is only mildly impaired in her ability to maintain attention, concentration, persistence, and pace. (*Id.*). Plaintiff does not point to evidence that the RFC, limiting Plaintiff to simple instructions and repetitive tasks, conflicted with a mild impairment to maintain attention, concentration, persistence and pace.

Similarly, Plaintiff's argument that the RFC improperly omitted a limitation as to Plaintiff's impaired ability to manage funds is unavailing. In his report, Mr. Spindler explicates

four work-related mental abilities.  (Tr. 432).  His fifth point, that Plaintiff may benefit from fund-management assistance if granted social security benefits, is merely an observation based on her marginally adequate knowledge for aspects of daily living, and limited but adequate judgment for routine matters.  (*Id.*).  This observation is not intended as a work-related limitation, and Plaintiff fails to adequately exemplify how it might relate to a work-related limitation, as management of personal funds does not necessarily imply such functional limitations. (*Id.*).

### 2. Dr. Haglund

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "Treating Source Rule," recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Id.*

When an ALJ determines a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.*  Moreover, the regulations require

the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id.*

The ALJ clearly considered Dr. Haglund as Plaintiff's treating psychologist.[2]  Under the Treating Source Rule, the ALJ is thus required to give good reasons for assigning less than controlling weight to his opinions.  Although the ALJ could have provided a better, more elaborate discussion for his assignment of only "partial" weight to the opinion of Dr. Haglund, the ALJ nonetheless did provide sufficiently specific reasons and performed a proper analysis under the Treating Source Rule.  Specifically, the ALJ acknowledged Dr. Haglund as a treating source and refers to treatment notes from multiple occasions dating back to 2009.  (Tr. 390-91, 394, 398, 402, 405).  He additionally pointed to the inconsistency between Dr. Haglund's assessment opinion that Plaintiff required ongoing treatment for her mental impairments, and other evidence on the record showing functionality despite a lack of treatment.  (Tr. 56, 472).

Further, Plaintiff's argument that the ALJ erred by omitting Dr. Haglund's limitations of poor attention, impulsivity, and distractedness from the RFC is not well-taken. Just as with the above analysis involving Mr. Spindler, the "limitations" that Plaintiff points to appear to be merely Dr. Haglund's observations as to the Plaintiff's long history of emotional and behavioral problems, including struggles with poor attention, impulsivity, and distractedness.  (Tr. 472 ). Additionally, Plaintiff fails to point to any evidence that definitively showed these are specific, work-related limitations that the ALJ must include in the RFC, especially considering the ALJ's proper treating source analysis discounting the opinion of Dr. Haglund.

### 3.  Dr. Katz

---

[2] Plaintiff argues the ALJ misclassified Dr. Haglund in this respect, referring to him as a "one-time treating psychologist."  However, this statement was not intended to express that Dr. Haglund only treated Plaintiff on one occasion, but rather that he was, but is no longer, Plaintiff's treating psychologist, as evidenced by the ALJ's reference to the medical records which clearly show treatment notes from multiple sessions with Dr. Haglund.  (Tr. 387, 390-91, 394, 398).

Despite affording "great weight" to the opinion of state agency psychologist Dr. Katz, the RFC does not incorporate her opinion that Plaintiff is limited to "simple quick work," an omission that Plaintiff cites as error requiring remand.  As a limitation provided by a medical source, the ALJ must provide good reasons for excluding it from the RFC.  See *Fleischer,* 774 F. Supp. 2d at 881.  Here, the ALJ did not provide good reasons, or any reasons, for ignoring Dr. Katz's opinion that Plaintiff is limited to "simple quick work."

The ALJ afforded "great weight" to both the opinions of Mr. Spindler and those of state agency consultants, including Dr. Katz.  The ALJ's RFC rationale, however, appears to heavily favor the opinion of Mr. Spindler over that of Dr. Katz.  Despite giving the opinions equal weight, the RFC only provided for mental limitations as to understanding, remembering, and carrying out simple instructions, and performing repetitive tasks, without reference to Dr. Katz's limitation to "simple quick tasks."  (Tr. 54).  Without providing any explanation for the omission, the ALJ based the RFC determination on Plaintiff's self-reporting to Mr. Spindler, her history of special education and borderline intellectual functioning (as previously determined by Mr. Spindler), her work history with the Salvation Army where she worked as a cashier and floor runner, her lack of treatment, and her ability to remain focused during the hearing. (Tr. 56).  The ALJ failed to acknowledge the conflict between the opinion of Mr. Spindler and that of Dr. Katz, which was supported by substantial evidence on the record, including determinations by both Dr. Katz and the ALJ that Plaintiff was moderately limited in her abilities regarding maintaining attention, concentration, and persistence.  (Tr. 53, 154).  This error requires remand for further analysis.

**C. *Ealy Argument***

18

Plaintiff argues the RFC does not adequately account for her difficulties in concentration, persistence, and pace.  In his opinion, the ALJ found Plaintiff has moderate difficulties with regard to concentration, persistence or pace, under his Paragraph B analysis.  (Tr. 53).  Further, Dr. Katz, whose opinion is given great weight, also found moderate difficulties as to attention, concentration, and persistence, and provided a specific limitation that Plaintiff be limited to "simple quick tasks."  (Tr. 154-55).  Notably, great weight was also given to Mr. Spindler's opinion, which provided that Plaintiff has only a mild impairment in her ability to maintain attention, concentration, persistence, and pace. (Tr. 432).  However, the ALJ does not state that he abandoned his original Paragraph B determination, nor does he account for the conflict between the opinions of Dr. Katz and Mr. Spindler, both of which were afforded great weight.

When a claimant is found to have moderate difficulties in concentration, persistence, or pace, the RFC and corresponding hypotheticals should reflect that finding.  *Ealy*, 594 F.3d at 516-17.  Further limitations beyond one to "simple, repetitive tasks" are not always necessary. See *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-CV-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct 18, 2011) (*discussing Ealy,* 594 F.3d 504).  However, courts should take "a fact-based approach to determine whether, considering the record evidence, the plaintiff required specific limitations regarding his or her moderate difficulties with concentration, persistence, or pace." *Weagraff v. Comm'r of Soc. Sec.*, No. 1:11-CV- 2420, 2013 WL 968268 (N.D. Ohio Jan. 7, 2013) *report and recommendation adopted sub nom. Weagraff v. Colvin*, No. 1:11-CV-2420, 2013 WL 980435 (N.D. Ohio Mar. 7, 2013) (citing *Jackson*, 2011 WL 4943966, at *4)). See *Ealy*, 594 F.3d at 516 (finding hypotheticals that limited plaintiff to simple and repetitive tasks did not adequately account for speed- and pace-based restrictions limiting plaintiff to two-hour tasks over an eight hour day, where speed was not critical). Dr. Katz's opinion limiting Plaintiff to "simple *quick*

tasks," which, as previously discussed, was not properly excluded from the RFC, placed a definite time restriction on the concentration, persistence and pace limitation by requiring that work tasks be short in duration.  The government provides insufficient support for its theory that "repetitive" includes a limitation to "quick" work by implication.  Thus, under *Ealy*, the ALJ's limitation to "simple instructions" and "repetitive work" is insufficient to account for all of Plaintiff's limitations in functional capacity.

Because the RFC and hypotheticals presented to the vocational expert did not adequately describe Plaintiff's limitations, the expert's conclusion that Plaintiff could work as a dishwasher, cleaner, or laundry worker does not serve as substantial evidence that Plaintiff could perform this work.  See *Ealy*, 594 F.3d at 516-17 (citing, c.f., *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005) ("Because the controlling hypothetical inadequately described [claimant's] limitations, the expert's conclusion…does not serve as substantial evidence that [claimant] could perform this work.").  Thus, the ALJ's determination that Plaintiff was able to perform a substantial number of other jobs was not supported by substantial evidence.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  September 28, 2015